Citation Nr: 1438750 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 10-38 345 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to a disability rating in excess of 10 percent for left ankle residuals of tendon injury, syndesmosis repair, and arthroscopy (left ankle disability) prior to April 1, 2009, and in excess of 20 percent from April 1, 2009.

2. Entitlement to service-connection for a lumbar spine disability, claimed as secondary to the service-connected left ankle disability.

3. Entitlement to service-connection for a cervical spine disability, claimed as secondary to the service-connected left ankle disability.


REPRESENTATION

Veteran represented by: Florida Department of Veterans Affairs




WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Michael J. Adams, Associate Counsel


INTRODUCTION

The Veteran had active service from July 2000 to July 2006.

These matters come to the Board of Veterans' Appeals (Board) on appeal from a May 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

The issues of entitlement to service connection for lumbar spine and cervical spine disabilities are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. Prior to April 1, 2009, the Veteran's residuals of left ankle surgery have been shown to be productive of no more than moderate limited motion.

2. From April 1, 2009, the Veteran's residuals of left ankle surgery have been shown to be productive of no more than marked limited motion; there has been no objective evidence of ankylosis or nonunion of the tibia and fibula with marked ankle disability.

CONCLUSIONS OF LAW

1. The criteria for an evaluation in excess of 10 percent prior to April 1, 2009 for service-connected residuals of left ankle surgery have not been met. 38 U.S.C.A. §§ 1155, 5107, 7104 (West 2002); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.10, 4.71, Diagnostic Codes 5262, 5270-74 (2013).

2. The criteria for an evaluation in excess of 20 percent from April 1, 2009 for service-connected residuals of left ankle surgery have not been met. 38 U.S.C.A. §§ 1155, 5107, 7104 (West 2002); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.10, 4.71, Diagnostic Codes 5262, 5270-74 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VCAA Duty to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In the present case, the Board is remanding the claims for service connection for a cervical spine disability and a lumbar spine disability. This decision constitutes a full grant of the benefits sought on appeal; therefore, no further discussion regarding VCAA notice or assistance duties is required with regard to those issues.

Pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). A VA letter issued in July 2008 satisfied the duty to notify provisions with respect to the increased rating claim and notified the Veteran of the regulations pertinent to the establishment of an effective date and disability rating.
The Board also finds that there has been compliance with the VCAA duty to assist provisions. The record in this case includes service treatment records, VA treatment records, private treatment records, and lay evidence. The Board finds that the record as it stands includes adequate competent evidence to allow the Board to decide the case, and no further action is necessary. See generally 38 C.F.R. § 3.159(c). No additional pertinent evidence has been identified by the Veteran.

The Veteran testified at a hearing in December 2013 before the undersigned Veteran's Law Judge (VLJ). In Bryant v. Shinseki, the United States Court of Appeals for Veterans Claims (Court) recently held that 38 C.F.R. 3.103(c)(2) (2013) requires that the VLJ who conducts a hearing fulfill two duties to comply with the above the regulation. Bryant v. Shinseki, 23 Vet. App. 488 (2010). These duties consist of (1) the duty to fully explain the issue or issues on appeal and (2) the duty to suggest the submission of evidence that may have been overlooked. In this case, the Veteran was assisted at her December 2013 Board hearing by an accredited representative from the Florida Department of Veterans Affairs. During the Veteran's hearing, the VLJ and the Veteran's representative asked the Veteran questions about the symptoms and severity of her ankle. Neither the Veteran nor her representative has asserted that VA failed to comply with 38 C.F.R. 3.103(c)(2) nor identified any prejudice in the conduct of the Board hearing. As such, the Board finds that the VLJ complied with the duties set forth in 38 C.F.R. 3.103(c)(2), consistent with Bryant, and that any error in notice provided during the Veteran's hearing constitute harmless error.

The Veteran's claim was previously remanded by the Board in March 2014 in pertinent part to obtain any outstanding VA records and to provide the Veteran with a VA examination for her ankle disability. Review of the claims file reflects that outstanding VA treatment records were associated with the claims file. Thus, with respect to this portion of the Board's remand, the Board finds that there has been substantial compliance with the remand directives. See Stegall v. West, 11 Vet. App. 268 (1998); D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict compliance with the terms of a remand request, is required); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding that there was no Stegall violation when the examiner made the ultimate determination required by the Board's remand, because such determination more than substantially complied with the Board's remand order).

Additionally, a VA examination was conducted in June 2014 in connection with the Veteran's claim. Review of the June 2014 VA examination report reflects that it is adequate for the purpose of adjudicating the Veteran's claim. Specifically, the examination report reflects that diagnoses and opinions which are congruent with the other evidence of record were rendered following a physical examination of the Veteran and a review of the record. The examiner conducted the necessary range of motion tests and addressed the pertinent symptoms and functional impairment of the Veteran's ankle. 38 C.F.R. § 3.159(c) (4) ; Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). In light of above, the Board's March 2014 remand directives have been substantially completed. Stegall, 11 Vet. App. 268 (1998); D'Aries, 22 Vet. App. 97 (2008); Dyment, 13 Vet. App. at 146-47 (1999).

The Veteran was also provided with additional VA examinations in September 2008 and January 2010. The Board finds that these examinations are thorough and adequate upon which to base a decision with regard to the Veteran's claim for an increased rating. The VA examiners reviewed the claims file, medical history, and examined the Veteran prior to providing a description of the Veteran's symptoms and level of functional impairment. Moreover, neither the Veteran nor her representative have objected to the adequacy of the examinations.

For the reasons expressed above, the Board finds that no further notice or assistance to the Veteran is required to fulfill VA's duty to assist her in the development of her claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002).

II. Increased Rating - General

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4 (2013). Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505, 510 (2007).

Initially the Board notes that the Veteran has been granted a separate rating for the scars associated with her left ankle disability. She has not appealed the assignment of this rating and the issue is therefore not before the Board at this time. Further, the evidence is negative for any indication that the Veteran experiences subastagalar or tarsal joint ankylosis, malunion of the os calcis or astragalus, or astragalectomy. As such, these Diagnostic Codes are not applicable.

The Veteran's left ankle disability is rated under Diagnostic Code 5271 for limited motion of the ankle. Under Diagnostic Code 5271, moderate limitation of motion warrants a 10 percent disability rating and marked limitation of motion warrants a 20 percent disability rating. 38 C.F.R. § 4.71a. Normal range of motion of the ankle is dorsiflexion to 20 degrees and plantar flexion to 45 degrees. 38 C.F.R. § 4.71a, Plate II.

Further, her left ankle disability is rated as 20 percent disabling beginning April 1, 2009. As such, the only Diagnostic Code that can afford her a higher rating scheduler rating after April 1, 2009 is 5270. Diagnostic Code 5270 provides that an evaluation of 30 percent is warranted when ankylosis of the ankle in plantar flexion is between 30 degrees and 40 degrees or when dorsiflexion is between 0 degrees to 10 degrees. A 40 percent rating is warranted when the ankylosis of the ankle in plantar flexion is at more than 40 degrees or in dorsiflexion at more than 10 degrees, or with abduction, adduction, inversion or eversion deformity. 38 C.F.R. § 4.71a.

When evaluating loss in range of motion, consideration is given to the degree of functional loss caused by pain. DeLuca v. Brown, 8 Vet. App. 202 (1995) (evaluation of musculoskeletal disorders rated on the basis of limitation of motion requires consideration of functional losses due to pain). In DeLuca, the Court explained that, when the pertinent diagnostic criteria provide for a rating on the basis of loss of range of motion, determinations regarding functional losses are to be "'portray[ed]' (38 C.F.R. § 4.40 ) in terms of the degree of additional range-of-motion loss due to pain on use or during flare-ups." Id. at 206. Under 38 C.F.R. § 4.40, disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and functional loss with respect to all these elements. Factors involved in evaluating and rating disabilities of the joints include: weakness, fatigability, lack of coordination, restricted or excess movement of the joint, or pain on movement. 38 C.F.R. § 4.45.

III. Increased Rating - Prior to April 1, 2009

The Veteran has asserted that she is entitled to an evaluation in excess of 10 percent for her left ankle disability, prior to April 1, 2009.

The probative and competent medical evidence from this period reflects that the Veteran experienced painful motion of the ankle and wore a walking boot or brace at intervals. A November 2007 private treatment report reflects that the Veteran had full range of motion on examination and no instability was observed. An August 2008 VA treatment record reflects that the Veteran had dorsiflexion to 10 degrees and plantar flexion to 35 degrees. A subsequent November 2008 private treatment report indicates that the Veteran had good range of motion.

In September 2008 the Veteran underwent a VA examination. The report reveals that the Veteran utilized a brace but had no deformity, giving way, instability, flare-ups, ankylosis, or loss of bone upon examination. Pain, stiffness, weakness, and locking were reported. Range of motion testing revealed dorsiflexion to 20 degrees and plantar flexion to 45 degrees. No additional limitation of motion was observed after repetition. The Veteran's ankle disability was found to have a moderate functional effect on her ability to do chores, shop, and travel, as well as a severe effect on her ability to exercise, and play sports. June 2008 X-rays were essentially negative for any findings.

Based on the evidence, the Board does not find that the Veteran's left ankle disability more closely approximated a rating in excess of 10 percent for the period prior to April 1, 2009. As described, the evidence reflects that the Veteran at worst had dorsiflexion to 10 degrees and plantar flexion to 35 degrees during this period. Her range of motion was described as good by her private treating physician in November 2008. "Good" range of motion does not rise to the level of marked limitation of motion. Further, the September 2008 VA examination report reflects that there was no ankylosis of the ankle at that time. There is no other medical evidence of record reflecting ankylosis of the left ankle during this period. As such, a higher rating is not warranted under either Diagnostic Code 5070 or 5071.

The Board has also considered whether the Veteran's ankle disability resulted in a level of functional loss greater than that already contemplated by the assigned rating for this period. DeLuca v. Brown, 8 Vet. App. 202, 206 (1995); 38 C.F.R. §§ 4.40, 4.45. The Veteran has reported that her ankle disability causes her great pain and requires the use of a brace at all times. The evidence reflects that the Veteran has consistently reported pain and experienced some limitation of motion. In addition, the September 2008 VA examiner found the functional impairment of the Veteran's ankle disability had a moderate to severe impact on her ability to complete chores and exercise, although only a mild effect on her feeding, bathing, dressing, toileting, and grooming. However, upon review, the Board finds this impairment does not rise to the level of functional loss greater than that already contemplated in the disability rating assigned. As described, under Diagnostic Code 5071, the criteria for a 20 percent rating requires marked limitation of motion. The medical evidence reflects that the Veteran's range of motion was good and was only moderately limited at the 2008 VA examination. Further, range of motion testing did not decrease after repetitive testing and no flare ups were reported. Based on the medical evidence and the range of motion numbers, particularly those recorded at the September 2008 VA examination, the Veteran does not have functional limitation more closely approximating marked limitation of motion of the ankle. 

IV. Increased Rating - From April 1, 2009

The Veteran's left ankle disability is rated as 20 percent disabling beginning April 1, 2009. The record reflects that the Veteran underwent a second ankle surgery in December 2008 and was placed on a temporary total rating for convalescence until April 1, 2009.

The most probative and competent medical evidence from this period consists of two VA examinations. The first was conducted in January 2010. The examination report reflects that the Veteran had dorsiflexion to 20 degrees, and only 10 degrees after repetition. She also had plantar flexion to 30 degrees and 20 degrees after repetition. The Veteran reported being unable to stand for more than a few minutes and walk more than a few yards. No deformity, instability, or abnormality were observed on examination. However, tenderness, weakness, abnormal motion, and guarding were observed. The Veteran reported missing two weeks of work over the previous 12 month period. Lastly, the examiner commented that her ankle condition was moderate to severe.

The second VA examination was conducted in June 2014. Range of motion testing revealed dorsiflexion to 10 degrees with no additional limitation of motion after repetition. Plantar flexion was to 20 degrees and fell to 15 degrees after repetition. Muscle strength testing was 3/5 and hypersensitivity along her surgical scar was noted. No ankylosis, shin splints, stress fractures, or achilles ruptures were noted. The Veteran reported wearing a brace constantly. The examiner also reported that her level of functional impairment did not rise to the level of amputation.

Based on the evidence, a higher evaluation for the Veteran's service-connected left ankle disability is not warranted for this period. Specifically, the only Diagnostic Code that could afford her an increased scheduler evaluation is 5070. Under Diagnostic Code 5070 an evaluation of 30 percent is warranted when ankylosis of the ankle in plantar flexion is between 30 degrees and 40 degrees or when dorsiflexion is between 0 degrees to 10 degrees. A 40 percent rating is warranted when the ankylosis of the ankle in plantar flexion is at more than 40 degrees or in dorsiflexion at more than 10 degrees, or with abduction, adduction, inversion or eversion deformity. As described, the medical evidence from this period does not reflect that the Veteran experiences any ankylosis of her left ankle. As such, a higher evaluation is not warranted under Diagnostic Code 5070.

Again, the Board has considered whether the Veteran's ankle disability resulted in a level of functional loss greater than that already contemplated by the assigned rating for this period. DeLuca, Vet. App. 202, 206 (1995); 38 C.F.R. §§ 4.40, 4.45. The Veteran has reported that her ankle disability causes her great pain and requires the use of a brace at all times. She has also reported that she has difficulty carrying and lifting heavy objects or standing for more than a few minutes at a time. This has affected her ability to work as a waitress and the January 2010 examination report reflects that she missed approximately 12 days in the prior 12 month period. In addition, the January 2010 VA examiner found the functional impairment of the Veteran's ankle disability had a severe impact on her ability to complete chores and exercise, although no effect on her feeding, bathing, dressing, toileting, driving, and grooming. However, upon review, the Board finds this impairment does not rise to the level of functional loss greater than that already contemplated in the disability rating assigned. As described, under Diagnostic Code 5070, the criteria for a 30 percent rating requires ankylosis of the ankle. The medical evidence reflects that the Veteran still has motion of her ankle, although it is limited. While range of motion testing did decrease after repetition, the Veteran maintained the ability to flex her foot. Pain, weakness, and limitation of motion are specifically contemplated by the rating criteria. Therefore, the Board finds that the level of functional impairment of the Veteran's left ankle does not more closely approximate ankylosis of the ankle.

V. Extraschedular Considerations

The Board has considered whether referral for an extraschedular evaluation is warranted. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2013). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step - a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

Turning to the first step of the extraschedular analysis, the Board finds that the symptomatology and impairment caused by the Veteran's ankle disability is specifically contemplated by the schedular rating criteria. The Veteran's ankle disability has been primarily manifested by pain, instability, weakness, and limitation of motion. The schedular rating criteria specifically contemplate ratings based on this symptomatology. 38 C.F.R. §§ 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5070-5071. In this case, comparing the Veteran's disability level and the symptoms listed in the Rating Schedule, the degrees of disability throughout the entire period under consideration are contemplated by the Rating Schedule and the assigned rating is, therefore, adequate.

The Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

In Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is part of an increased rating claim when such claim is expressly raised by a veteran or reasonably raised by the record. In this case, the Veteran has asserted that her ankle disability caused her to miss up to 12 days a year and at times forces her to leave work early. However, she has continued to remain employed throughout the period on appeal. She has also not alleged that she is unemployable, rather, that her ankle disability interferes with her job responsibilities. Thus, the Board finds that Rice is inapplicable because there is no evidence of unemployability due to the Veteran's service-connected ankle disability.





ORDER

Entitlement to a disability rating in excess of 10 percent for left ankle residuals of tendon injury, syndesmosis repair, and arthroscopy prior to April 1, 2009, is denied.

Entitlement to a disability rating in excess of 20 percent from April 1, 2009 for left ankle residuals of tendon injury, syndesmosis repair, and arthroscopy, is denied.


REMAND

After review of the record, the Board finds that further development is necessary prior to appellate review.

Under section 3.310(a) of VA regulations, service connection may be established on a secondary basis for a disability which is proximately due to or the result of service- connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). Where a service-connected disability aggravates a nonservice-connected condition, a veteran may be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. Allen, 7 Vet. App. at 448. Temporary or intermittent flare-ups of symptoms of a condition, alone, do not constitute sufficient evidence aggravation unless the underlying condition worsened. Cf. Davis v. Principi, 276 F. 3d 1341, 1346-47 (Fed. Cir. 2002); Hunt v. Derwinski, 1 Vet. App. 292, 297 (1991).

In accordance with the March 2014 remand, the Veteran was provided a VA examination in June 2014. While an opinion regarding the etiology of the Veteran's current back and neck disabilities was obtained, the examiner did not use the required "caused or aggravated" language. Rather, the examiner opined that it was less likely as not that the Veteran's conditions were proximately due to or the result of her service-connected left ankle disability. These opinions do not address the issue of aggravation. As such, remand is necessary in order to obtain a clarifying opinion.

Accordingly, the case is REMANDED for the following action:

1. Obtain a medical opinion from an appropriate VA clinician who has not yet reviewed the Veteran's claim. The claims file, including a copy of this remand, must be made available to the examiner. If deemed necessary, an in-person examination should be scheduled and any medically indicated tests should be conducted. After a review of all the evidence, including the Veteran's December 2013 hearing testimony, the examiner is asked to provide the following opinions:

Whether it is at least as likely as not (50 percent or greater probability) that any current thoracolumbar or cervical spine disability was caused or aggravated by the Veteran's service-connected left ankle disability, to include whether any altered gait that is a result of the left ankle disability has caused or aggravated a thoracolumbar or cervical spine disability.

Aggravation is defined as a permanent worsening beyond the natural progression of the disability.

A full and complete rationale should accompany the opinion provided.

2. Notify the Veteran that she must report for any scheduled examination and cooperate in the development of the claim. Failure to report for a VA examination without good cause may result in denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2013).

3. Thereafter, re-adjudicate the Veteran's claims for service connection with consideration of all of the evidence of record. If the benefits sought are not granted, issue a supplemental statement of the case and afford the Veteran and her representative an appropriate opportunity to respond before returning the case to the Board for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



______________________________________________
ROBERT C. SCHARNBERGER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs